IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL LIAPIS,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br><br>Case No. 2:05-CR-95 TS |

This matter comes before the Court on Defendant's Motion to Suppress. Defendant waived an evidentiary hearing on his Motion and, therefore, the Court is prepared to rule on the briefs and exhibits submitted by the parties. Briefing was completed on this Motion on August 31, 2005.

I.  FINDINGS OF FACT

On January 11, 2005, Detective Swanson of the West Jordan Police Department signed an Affidavit for Search Warrant before Third District Court Judge Brian.  Judge Brian issued the warrant based on statements made by Detective Swanson in the Affidavit.

1

At the time he swore the Affidavit, Detective Swanson had been a police officer employed by the West Jordan Police Department for over seven (7) years. He was assigned to the Detective Division as a Narcotics Detective. Additionally, Detective Swanson had been responsible for investigating narcotics offenses and he had received training and experience in that field.

The primary basis for the search warrant were conversations that Detective Swanson had with a confidential informant ("CI") and an investigation conducted with the cooperation of the CI. The CI had contacted Detective Swanson and stated that Defendant was conducting a drug distribution operation from his home, that Defendant employed video surveillance cameras to monitor the home, that Defendant posted guards outside the home, and that Defendant kept a large caliber firearm under a pillow near him at all times.

Detective Swanson found this information reliable for a number of reasons. First, the CI disclosed personal information about himself/herself, including his/her name, date of birth, social security number, and other pertinent information. Detective Swanson also found the CI reliable because of Detective Swanson's prior involvement in executing a search warrant on Defendant's residence on November 3, 2004. During the execution of that prior search warrant, evidence of a drug distribution operation was found. Additionally, Defendant was found sitting on a loaded firearm.

Based on the CI's information, Detective Swanson arranged for a controlled buy from Defendant at his residence approximately seven (7) days before seeking the search warrant. Both the CI and an unwitting informant ("UI") were involved in the controlled buy. The UI was

unaware that law enforcement was involved in the purchase. Detective Swanson met the CI before the purchase and searched the CI's person and vehicle for any contraband or currency. The search turned up neither. Detective Swanson gave the CI a predetermined amount of money to use for the controlled buy. At that point, officers followed the CI to the residence of the UI. The CI picked up the UI and they drove to Defendant's residence. The UI entered Defendant's home, stayed inside for approximately ten (10) minutes, and returned to the CI's vehicle. The officers then followed the CI and the UI back to the UI's residence where the CI dropped off the UI.

     At this point, Detective Swanson met with the CI at a predetermined location. The CI gave Detective Swanson a plastic baggy with a white crystalline substance inside. Detective Swanson once again searched the CI and the CI's vehicle for any contraband or currency and found none. Detective Swanson interviewed the CI who stated that he or she had given the money to the UI and had driven the UI to Defendant's home. The UI entered Defendant's residence and returned with the baggy. The UI gave the CI the baggy in exchange for the money. The white crystalline substance found in the baggy was tested with a field test kit and it tested positive as methamphetamine.

     After the controlled buy, Detective Swanson conducted surveillance on Defendant's home. During this surveillance, Detective Swanson observed short-term vehicle and pedestrian traffic at Defendant's residence. Based on his training and experience, Detective Swanson stated that people involved in the sale of narcotics from their residences tend to have such short-term

traffic.  Also, Detective Swanson reported receiving citizen complaints about short-term traffic and drug activity at Defendant's residence.

Additionally, Detective Swanson included in the Affidavit Defendant's criminal history. The Affidavit stated that Defendant had been arrested eleven (11) times and those arrests included arrests for domestic assault, possession of a firearm, and drug-related offenses.  It is from this information which Judge Brian made his decision to issue the search warrant.

## II.  CONCLUSIONS OF LAW

Defendant seeks to suppress evidence found as result of a search, conducted pursuant to a search warrant, at Defendant's home on January 13, 2005, on the basis that there was insufficient probable cause for the issuance of the search warrant.

"A magistrate judge's task in determining whether probable cause exists to support a search warrant 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  The Court "reviews the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and simply ensuring 'that the magistrate had a substantial basis for concluding that probable cause existed.'" *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001) (quoting *Gates*, 462 U.S. at 238–39).  "The magistrate's determination of probable cause is entitled to great deference." *United States v. Cantu*, 405 F.3d 1173, 1174 (10th Cir. 2005).

Recently, in *United States v. Artez*, the Tenth Circuit addressed a set of circumstances strikingly similar to the case before the Court. 389 F.3d 1106 (10th Cir. 2004). The Tenth Circuit found that a search warrant affidavit was sufficient because it reported five pieces of information:

> (1) a tip from a confidential informant that methamphetamine was being distributed at Defendant's residence; (2) the successful execution of two controlled buys of methamphetamine from the suspect residence; (3) a tip from an anonymous informant to a different police unit that methamphetamine was being distributed at Defendant's residence; (4) the results of surveillance of the suspect residence indicating a series of visitors staying for short periods of time, consistent with drug trafficking activity; and (5) the narcotics-related criminal histories of four inhabitants or frequent visitors of the suspect residence, including an active arrest warrant against one of these individual for possess of drug paraphernalia.

*Id*. at 1115. The Tenth Circuit discussed the relevance of each piece of information separately. This Court will do the same, outlining the relevant pieces of information in the affidavit in question.

A.   THE TIP FROM THE CONFIDENTIAL INFORMANT

The Supreme Court has adopted a "totality of the circumstances" approach to determine whether information from a confidential informant can establish probable cause. *Gates*, 462 U.S. at 238. Some of the factors to be examined are the informant's veracity, reliability, and basis of

knowledge. *Id*. at 230. Under the totality of the circumstances test, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some indicia of reliability." *Id*. at 233.

In this case, there was a substantial basis for the magistrate to determine that the tip from the CI was reliable. First, the CI gave truthful personal information about themselves. Second, the information given to Detective Swanson by the CI was consistent with what Detective Swanson had observed earlier during the execution of another search warrant at Defendant's residence on November 3, 2004. Finally, the other evidence, which will be discussed below, sufficiently corroborated the CI's tip.

B.   THE CONTROLLED BUY

"A tip from an anonymous or confidential informant that narcotics are being distributed at a particular location may be corroborated through the arrangement of a controlled purchase at the suspect location." *Artez*, 389 F.3d at 1111. Such a transaction generally involves the following formalities: "the police search the informant (and his vehicle, if appropriate) for money and contraband prior to the buy; give the informant money with which to purchase the narcotics; transport the informant to the suspect residence (or follow the informant to the residence); watch the informant enter the suspect residence, disappear while inside the suspect residence, and emerge from the suspect residence; search the informant upon exiting the suspect residence; and receive the narcotics from the informant." *Id*. at 1111–12. "[T]he absence of constant visual contact with the informant conducting the transaction does not render a controlled purchase insufficient, nor does the absence of an audio-recording of the transaction." *Id*. at 1112.

The controlled buy in this case, like the one at issue in *Artez*, differed from this format as a result of the use of an unwitting informant. "The use of an unwitting informant introduces an additional layer of uncertainty to the transaction because it leaves open the possibility that the narcotics were acquired not at the suspect residence but at the location where the confidential and unwitting informants met before and after the transaction." *Id*. The Tenth Circuit and other Circuits have approved the use of unwitting informants in transactions similar to the one at issue here. *See id*. at 1112–13; *United States v. Richardson*, 86 F.3d 1537, 1542–43 (10th Cir. 1996); *United States v. Jordan*, 999 F.2d 11, 12–14 (1st Cir. 1993); *United States v. Blackwood*, 913 F.2d 139, 141 (4th Cir. 1990). The controlled purchase in the case before the Court is similar to the controlled purchases made, by use of an unwitting informant, in those cases. As a result, this Court concludes, based on this precedent, that the controlled buy in this case corroborated the CI's tip.

Defendant seeks to distinguish *Artez*, because *Artez* involved two controlled purchases instead of one. Despite the fact that only one controlled purchase was conducted, the Court still finds that the controlled purchase that did take place does help to corroborate the CI's tip. The fact that there was one controlled purchase instead of two may lessen the corroborating effect of the CI's tip, but it does not eliminate it. The one controlled purchase, along with the other items included in the affidavit discussed below, does corroborate the CI's tip.

C.    SURVEILLANCE CONDUCTED BY DETECTIVE SWANSON

The Tenth Circuit has stated that "[p]olice surveillance which 'show[s] an unusually high volume of visitors briefly entering and leaving [a] residence, consistent with drug trafficking[,]'

can also corroborate information from a confidential informant that the residence is being used to distribute narcotics." *Artez*, 389 F.3d at 1114 (quoting *United States v. Corral*, 970 F.2d 719, 727 (10th Cir. 1992)).  Detective Swanson conducted surveillance on Defendant's residence. While conducting this surveillance, Detective Swanson witnessed short-term vehicle and pedestrian traffic at the residence.  Based on his training and experience, Detective Swanson believed that such short-term traffic was consistent with the selling of narcotics.  The Court finds that this surveillance activity corroborated the CI's tip and helped to establish probable cause.

D.      CITIZEN COMPLAINTS

Tips from others can help to corroborate information from a confidential informant.  *Id*. *See also United States v. Sturmoski*, 971 F.2d 452, 457–58 (10th Cir. 1992) (finding that tip from second confidential informant corroborated tip from first confidential informant).  In this case, Detective Swanson stated that he had received complaints from citizens concerning short-term traffic and drug activity at Defendant's residence.  There has been little detail provided to the Court about these citizen complaints.  However, they could properly be considered as corroborating the confidential informant's tip and in finding that probable cause existed.

E.      THE CRIMINAL HISTORY OF DEFENDANT

"Criminal history alone is not enough to support a finding even of reasonable suspicion, much less probable cause. . . .  However, criminal history, combined with other factors, can support a finding of reasonable suspicion or probable cause." *Artez*, 389 F.3d at 1114.  Here, Detective Swanson, in his Affidavit for Search Warrant, included Defendant's criminal history. In that criminal history, Detective Swanson, included that Defendant had been arrested eleven

(11) times and that those arrests had included domestic violence, weapons, and drug charges. While this information is not sufficient, by itself, to support a finding of probable cause, when considered along with the other factors discussed above, it does help to corroborate the CI's tip and provides additional information to support a finding of probable cause.

### III.  CONCLUSION

The Affidavit for Search Warrant submitted to Judge Brian contained the following important pieces of information: (1) the confidential informant's tip; (2) the controlled buy; (3) Detective Swanson's surveillance of Defendant's home; (4) citizen complaints; and (5) Defendant's criminal history.  As a result of the combination of these factors, the Court finds that the search warrant was supported by probable cause.

Based upon the foregoing, it is therefore

ORDERED that Defendant's Motion to Suppress is DENIED.  It is further

ORDERED that the time from the filing of the Motion to Suppress through the date of September 8, 2005, is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(F) and (J).

DATED   September 8, 2005.

BY THE COURT:

_____
TED STEWART
United States District Judge